**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| | ) Case No. |
|    vs. | ) 8:21-MJ-01527-SPF |
| | ) |
| | ) |
| JOSEPH HACKETT, | ) |
| | ) |
|         Defendant. | ) |

---

**INITIAL APPEARANCE AND BOND HEARING**
**BEFORE THE HONORABLE SEAN P. FLYNN**
**UNITED STATES MAGISTRATE JUDGE**

**MAY 28, 2021**
**3:00 P.M.**
**TAMPA, FLORIDA**

---

     Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

---

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

1    **APPEARANCES:**

2

3    **FOR THE GOVERNMENT:**

4

5              Shauna S. Hale

6              United States Attorney's Office

7              400 North Tampa Street, Suite 3200

8              Tampa, Florida  33602

9              (813) 274-6000

10

11

12   **FOR THE DEFENDANT THOMAS HACKETT:**

13

14             Kevin J. Darken

15             Barnett, Bolt, Kirkwood, Long, Koche & Foster

16             601 Bayshore Boulevard, Suite 700

17             Tampa, Florida  33606

18             (813) 253-2020

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2                    – – – o0o – – –
 3           THE COURT:  Mr. Calderon, would you please call the
 4   next case.
 5           COURTROOM DEPUTY:  In the matter of United States of
 6   America versus Joseph Hackett, Criminal Case Number
 7   8:21-MJ-1527-SPF.
 8           THE COURT:  Counsel, please make appearances.
 9           MS. HALE:  Good afternoon, Your Honor.  Shauna Hale
10   for the United States.
11           THE COURT:  Good afternoon, Ms. Hale.
12           MR. DARKEN:  Your Honor, Kevin Darken, Barnett Bolt,
13   with a limited appearance for today's hearing.
14           THE COURT:  All right.  Good afternoon, Mr. Darken,
15   and good afternoon to you, Mr. Hackett.
16           Can you please speak up, Mr. Hackett, so I can hear
17   you.
18           THE DEFENDANT:  Good afternoon.
19           THE COURT:  Thank you, Mr. Hackett.
20           This proceeding is being recorded, so if you could
21   please speak up when addressing the Court so we can make sure
22   to accurately record what you say at this hearing, I would
23   appreciate it.
24           All right.  Mr. Hackett, you are here today because
25   you've been charged in four counts of the Fourth Superseding
```

1    Indictment that was issued out of the District of Colombia,

2    United States District Court for the District of Colombia.

3    Have you received a copy of that Fourth Superseding Indictment,

4    sir?

5              Can you please speak up?

6              THE DEFENDANT:  I think -- I think, Your Honor.

7              THE COURT:  All right.  Well, if you'd turn to the

8    second page, after it lists all the defendants in the caption,

9    you'll see it says Fourth Superseding Indictment.  Do you see

10   that, sir?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You do see -- you do have the Fourth

13   Superseding Indictment?

14             THE DEFENDANT:  I think so, yes.  Fourth

15   Superseding -- this says Fourth Superseding Indictment.

16             THE COURT:  That's right.

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  Now, sir, at this hearing I'm

19   going to advise you of the charges against you and the rights

20   that you have, and those rights do include your right to be

21   represented by an attorney.  We'll also address the issue of

22   bond or your detention.  Now, if there's anything that I say

23   during this hearing that you do not understand, please let me

24   know and I will explain it to you.  You may also speak with

25   your attorney, Mr. Darken, at any time during this hearing, and

1    if you'd like an opportunity to speak with him in private, just

2    let me know and we'll take a break and I'll give you that

3    opportunity.  Do you understand?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  All right.  Sir, at the outset, let me

6    advise you that you do have the right to remain silent.  That

7    means you're not required to make any statements to the Court

8    or to law enforcement, and you should know that any statement

9    that you do make may be used against you.  Do you understand?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  Sir, you've received a copy

12   of the Fourth Superseding Indictment.  At this time I'm going

13   to invite the prosecutor to summarize the charges against you.

14             Ms. Hale.

15             MS. HALE:  Your Honor, this defendant is charged in a

16   multi-count indictment.

17             THE COURT:  If you don't have it with you,

18   Ms. Hale --

19             MS. HALE:  I do, Your Honor.  I was just pulling it

20   up.  I'm sorry.

21             This defendant is charged in Counts One, Two, Three

22   and Four of the Fourth Superseding Indictment.

23             Count One alleges that on or about January 6th, this

24   defendant and several other co-conspirators conspired against

25   the United States in what was essentially the insurrection at

1  the Capitol.  All the individuals alleged in the indictment,

2  the allegation is that they did knowingly combine, conspire,

3  confederate and agree with each other and others, known and

4  unknown, to commit an offense against the United States, namely

5  to corruptly obstruct, influence and impede an official

6  proceeding, that is, the certification of the Electoral College

7  vote, in violation of Title 18, United States Code, Section

8  1512(c)(2).  That is Count One, Your Honor.

9               THE COURT:  Count Two is on page 29.

10              MS. HALE:  Thank you, sir.

11              Count Two alleges that this defendant, in violation

12 of 18 United States Code Section 1512(c)(2) and 18 U.S.C.

13 United States Code subsection 2, did obstruct an official

14 proceeding through aiding -- and/or aided and abetted

15 obstruction of an official proceeding.  In paragraph 166 on

16 page 29, the indictment reads that paragraphs 1 through 30 and

17 paragraphs 35 through 165 of this indictment are realleged and

18 incorporated as though set forth therein.  As set forth in

19 paragraphs 35 through 165, on or about January 6, 2021, in the

20 District of Colombia and elsewhere, the defendants, including

21 this defendant, Mr. Hackett, attempted to and did corruptly

22 obstruct, influence and impede an official proceeding, that is,

23 the certification of the Electoral College vote, and did aid

24 and abet others, known and unknown, to the -- to do the same.

25              Count Three alleges a violation of 18 United States

1  Code Section 1361 and a violation of 18 United States Code

2  Section Number 2, which is destruction of Government property

3  and aiding and abetting the same.  The allegation there

4  reincorporates paragraphs 1 through 30 and paragraphs 35

5  through 165, and the indictment goes on to read:  As set forth

6  in paragraphs 134 through 137 and paragraphs 142 through 145,

7  on January 6, 2021, in the District of Colombia and elsewhere,

8  the defendants, excuse me, including this defendant, attempted

9  to and did willfully injure and commit depredation against

10  property of the United States, that is, the United States

11  Capitol Building, thereby causing or attempting to cause damage

12  that exceeded $1,000, and did aid and abet others, known and

13  unknown, to do so.

14          And finally, in Count Four, this defendant and his

15  co-conspirators are alleged, as set forth in paragraphs 1

16  through 30 and paragraphs 35 through 165, as set forth in

17  paragraphs 125, 136 to 137, 148, 149, 154 and 155, that on or

18  about January 6, 2021, in the District of Colombia and

19  elsewhere, the defendant, along with the co-conspirators,

20  co-defendants, did knowingly enter and remain in a restricted

21  building and grounds, that is, in a posted, cordoned-off or

22  otherwise restricted area within the United States Capitol and

23  its grounds, where the Vice President and Vice President Elect

24  were temporarily visiting, without lawful authority to do so,

25  and this is in violation of Title 18, United States Code,

1  Section 1752(a)(1).

2              THE COURT:  Thank you, Ms. Hale.

3              Mr. Hackett, as Ms. Hale has just summarized for you,

4  you have been charged in four counts of the Fourth Superseding

5  Indictment, and I'll summarize them for you again.

6              Count One charges you with conspiracy in violation of

7  18 U.S.C. Section 371, where it's alleged that you conspired

8  with others that are listed in the Fourth Superseding

9  Indictment to corruptly obstruct, influence or impede -- and

10  impede an official proceeding, that is, the certification of

11  the Electoral College vote, in violation of 18 U.S.C. Section

12  1512(c)(2).

13              Count Two charges you with a violation of

14  18 U.S.C. Section 1512(c)(2) and 18 U.S.C. Section 2,

15  obstruction of an official proceeding and aiding and abetting,

16  where it's alleged that you attempted, did and corruptly

17  obstruct, influence and impede an official proceeding, that is,

18  the certification of the Electoral College vote, and did aid

19  and abet others, known and unknown, to do the same, in

20  violation of 18 U.S.C. Section 1512(c)(2) and 18 U.S.C.

21  Section 2.

22              Count Three charges you with destruction of

23  Government property and aiding and abetting, in violation of

24  18 U.S.C. Section 1361 and 18 U.S.C. Section 2, where it's

25  alleged that you attempted to and did willfully injure and

1   commit depredation against property of the United States, that

2   is, the United States Capitol Building, thereby causing or

3   attempting to cause damage that exceeded $1,000, and you did

4   aid and abet others, known and unknown, to do the same, in

5   violation of 18 U.S.C. Section 1361 and 18 U.S.C. Section 2.

6           And the Fourth Count against you is restricted

7   building or grounds, in violation of 18 U.S.C. Section

8   1752(a)(1), where it's alleged that on January 6 you did

9   knowingly enter and remain in a restricted building and

10  grounds, that is, any posted, cordoned-off or otherwise

11  restricted area within the United States Capitol and its

12  grounds, where the Vice President and the Vice President Elect

13  were temporarily visiting, without lawful authority to do so,

14  in violation of 18 U.S.C. Section 1752(a)(1).

15          Do you understand the charges against you, sir?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Mr. Hackett, as I mentioned

18  to you at the beginning, you are entitled to an attorney in

19  this case.  You may consult with an attorney and be represented

20  at all stages of these criminal proceedings, both in and out of

21  court, and your attorney may be present during any questioning

22  by law enforcement.  Now, you have the right to hire your own

23  attorney of your own choosing.  If you could not afford an

24  attorney, the Court will appoint an attorney to represent you

25  at no cost to you, or you can represent yourself.

1           Now, it's my understanding for purposes of today's

2    hearing that you have retained Mr. Darken to represent you.

3    Is that how you would like to proceed?

4           THE DEFENDANT:  Yes.

5           THE COURT:  All right.  Mr. Hackett, please be

6    advised that if you're not a United States citizen, that you

7    may request that an attorney for the Government or a Federal

8    law enforcement official notify a consular officer from your

9    country of nationality that you've been arrested, and please

10   know that even without making this request, there may be a

11   treaty or international agreement which may require consular

12   notification.  Do you understand?

13          THE DEFENDANT:  Yes.

14          Now, as required by Rule 5(f), the United States is

15   ordered to produce all exculpatory evidence to the defendant

16   pursuant to *Brady v. Maryland* and its progeny, and failing to

17   do so in a timely manner may result in sanctions, including the

18   exclusion of evidence, adverse jury instruction, dismissal of

19   charges and contempt proceedings.  Do you understand, Ms. Hale?

20          MS. HALE:  Yes, sir.

21          THE COURT:  Now, Mr. Hackett, before the Court can

22   order you transferred to the United States District Court for

23   the District of Colombia, where you have been charged, the

24   Court must find that you are the person named in the Fourth

25   Superseding Indictment.  To do so, the United States would have

1 to show sufficient evidence that there's probable cause to

2 believe that you are the person named.  If it does so, you

3 would be held to answer in that District.

4          Now, you may waive your right and give up your right

5 to an identity hearing.  If you do so, the Court would then

6 find that you are the person named and enter an order directing

7 you to be held to be answered in the District of Colombia.

8          Do you understand your right to an identity hearing,

9 sir?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Now, in addition, before the Court can

12 order your transfer to the District of Colombia, the

13 United States must produce the warrant, a certified copy of the

14 warrant or a reliable electronic form of either, and you may

15 waive your right to production of the warrant.  Do you

16 understand your right to the production of a warrant, sir?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right, sir.  Now, I have with me on

19 the bench a waiver form indicating that you wish to waive your

20 right to an identity hearing and a production of the warrant.

21 Is that what you would like to do, sir?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Did you make this decision

24 after consulting with your attorney?

25         THE DEFENDANT:  Yes.

1          THE COURT:  All right.  The Court will accept your

2    waiver and find that you are the person named in the Fourth

3    Superseding Indictment.

4          Now, Mr. Hackett, let me advise you that under

5    Rule 20 of the Rules of Criminal Procedure, a prosecution may

6    be transferred from the district where the indictment is

7    pending to the district where you are arrested, held or

8    presented if you state in writing a wish to plead guilty or

9    nolo contendere and to waive trial, and the district where the

10   indictment is pending consents in writing to the Court's

11   disposing of the case in the transferee district and files a

12   statement in the transferee district.  The United States

13   Attorneys in both districts must approve the transfer in

14   writing.

15         Do you understand your right to transfer?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right, sir.  You are entitled to a

18   bond hearing.  Now, that's a hearing to determine whether you

19   are eligible for bond, and if so, on what terms and conditions,

20   or whether you should be detained because you are a risk of

21   flight, a danger to the community or both.

22         Ms. Hale, what's the Government's position regarding

23   bond or detention?

24         MS. HALE:  Your Honor, the United States is seeking

25   detention.

```
1              THE COURT:  What's the basis for the motion?
2              MS. HALE:  Your Honor, the -- this case is a
3    presumption case under 18 United States Code 3142(f).  This is
4    both a crime of violence, as listed -- as charged in
5    Count Three, as well as an offense listed in Section 2332b,
6    subsection G, as in guy, subsection 5, subsection B, which is
7    defined as a Federal crime of terrorism.
8              So the count as alleged in Count Three, as indicated,
9    is a crime of violence and a federal crime of terrorism, and
10   the factors that Your Honor should consider is listed in
11   18 U.S.C. 3142(g).
12             The Government contends that although this defendant
13   is -- has ties to the community here, there's no indication
14   that he has any ties to the community in Washington, D.C.
15   In addition to that, the Government contends that he is a
16   danger to the community.
17             In looking at 3142(g), Your Honor, the nature and the
18   circumstances of this offense that's charged, including --
19   Your Honor is to consider whether or not this offense is a
20   crime of violence or a violation or a Federal crime of
21   terrorism.
22             The weight of the evidence against this person,
23   Your Honor, and what I've been able to glean in the few hours
24   that I've had this case, is that this defendant was involved in
25   a paramilitary group called the Oath Keepers that have made,
```

I guess, national news here lately, and as involved -- as concerns the January 6 insurrection at the Capitol, this defendant was involved in 16 meetings related to the planning, travel and supplies of himself and others to the Capitol on January 6th.

This defendant has been identified as a leader in Sarasota of the Oath Keepers group.  He has been -- evidence shows that he has been on local and national calls related to the Oath Keepers and their planning of the January 6th insurrection.  In fall of 2020, Your Honor, agents have uncovered evidence that this defendant was involved in combat training with other members of the Oath Keepers.  In December 2020 there was an e-mail from this defendant to another Oath Keeper member where they discussed in coded language the operational security of the January 6th insurrection, secured secure communications, as well as what the rallying point near the insurrection would be.  The purpose of the rallying point would be to not carry guns into the District at the point where the insurrection -- because guns are illegal in the District, but there was a coordinated effort and a plan to have a specific hotel where members of the Oath Keepers would keep -- would keep firearms and munitions if they were called upon by President Trump, under the Insurrection Act, to act as a militia to quell any insurrection.

1   And what the evidence in this case shows is that

2   that -- what's called a quick reaction force was actually

3   stationed outside of D.C., as indicated through various

4   communications, and that this defendant -- through electronic

5   surveillance, agents discovered that he was present at this

6   quick response or quick reaction force hotel the day before, on

7   January 5th, the insurrection and the day after the

8   insurrection.  And through the course of the investigation what

9   agents have gleaned about that is what individual members of

10  the Oath Keepers were doing was on the day before the

11  insurrection they were dropping off their weapons at the hotel

12  so that they could travel to the Capitol without having

13  firearms, but the firearms would be located in relative

14  closeness to them at the Capitol.  And then what they observed

15  later was this defendant, through electronic communications,

16  and others then went back to that hotel the day after the

17  insurrection.  Agents believe, based on the evidence in this

18  case, what that means is that they were picking up the weapons

19  that they had dropped off on the day before.

20  Additional evidence places this defendant in what has

21  become known as "the stack."  It's been named -- or it's been

22  sort of made famous on television, the stack of these

23  paramilitary individuals who go in a straight line, they were

24  part of the members of the first group -- some of the first

25  groups to breach the Capitol, dressed in paramilitary and

1    tactical style clothing.  This defendant has been a member --

2    has been identified as a member of that stack.

3            And finally, today there was a search warrant of his

4    home, where agents located 11 long guns, at least one AR style

5    rifle, three handguns -- three handguns and at least 3,000

6    rounds of ammunition.

7            So the weight of the evidence, Your Honor, we believe

8    is strong.  We can place this defendant at the Capitol that

9    day; we can place him into planning, several chats or e-mails

10   have been identified that this defendant has been a part of

11   that helped to plan the insurrection; and finally, Your Honor,

12   this defendant has involved himself in paramilitary training,

13   and of course he had a lot of firearms today.

14           So based on those things, Your Honor, the Government

15   believes that this defendant, while he does have ties to this

16   community, he does not have ties to the D.C. community, that he

17   is a danger to the community, and looking at the factors as

18   indicated in 3142(g), the nature and circumstances of this

19   offense, the weight of this evidence and the nature and

20   seriousness of danger to any person or the community that would

21   be posed by a person's release, the Government does not believe

22   that this defendant can overcome his presumption and we're

23   asking for detention.

24           THE COURT:  A point of clarification, Ms. Hale.

25   You're proffering that the defendant was wearing tactical gear

1    when he entered the Capitol on January 6?

2              MS. HALE:  Correct.

3              THE COURT:  All right.  Thank you, Ms. Hale.

4              All right.  Mr. Darken, response, please?

5              MR. DARKEN:  Your Honor, first of all, as to the

6    presumption, I'm looking at my phone here quickly, but I don't

7    see where the presumption would apply to Count Three, Four,

8    injuring or committing depredation against property of the

9    United States.

10             In any event, I would bring several factors to the

11   Court's attention.

12             We looked through the indictment briefly, and a

13   number of these defendants have been released on bond,

14   including in this district.

15             Connie Meggs is indicted also on Counts One, Two,

16   Three and Four, just like this defendant, from Dunnellon,

17   Florida, was released on recognizance and high severity

18   supervision by Judge Amit Mehta in the District of Colombia

19   with home detention and GPS monitoring.

20             Thomas Caldwell, who is listed in this indictment and

21   also in one of the obstruction counts, Count Nine, which this

22   defendant was not listed on any obstruction count, he was

23   released on bond in Virginia to home detention and electronic

24   monitoring.

25             Graydon Young from Engelwood, Florida, in this

1   district, was released on house arrest.

2          There's an additional defendant named Adam Johnson

3   from Parrish, Florida, down in Manatee County, he is the guy

4   who was seen removing the pedestal from the Rotunda of the

5   Capitol, he was released on $25,000 bond and travel

6   restrictions and electronic monitoring.

7          So obviously not all of these people are being

8   detained.

9          Here I would point out to the Court that although

10  this defendant was charged in Counts One, Two and Three and

11  Four, he's not charged in Counts Five, Six, Seven and Eight,

12  which are the obstructing the officers counts.  Those are the

13  counts for the people who were actually impeding and impairing

14  the police officers.  He's not charged with that.  In addition,

15  he's not charged in Counts Nine and Ten, Eleven, Twelve and

16  Thirteen, which are the obstruction counts after January 6th.

17  So there's a whole bunch of people charged in this indictment

18  with obstructing law enforcement post-January 6th.  He's not

19  charged with anything post-January 6.

20          Now, I'm a Biden guy, and I have no sympathy for what

21  happened that day, but you have to look at risk to the

22  community now, and the issue is now, not January 6th.  He's

23  been out, I mean, free since January 6th.  It's now six months

24  later.  He was approached, I'll proffer to the Court, by

25  law enforcement at the end of March, asked to do an interview,

1  he talked to a different lawyer, he didn't do the interview.

2  He's known about this since the end of March.  He's not run.

3          He's got a wife.  He's got an 11-year-old daughter.

4  He's lived in Sarasota for 22 years.  According to the Pretrial

5  Services report, he has a business with his wife.  He's a

6  chiropractor and his wife is an acupuncturist, I believe.  They

7  work in the same business.  He's not going anywhere.

8          And in terms of danger to the community, what

9  evidence is there that he's done anything since January 6th?

10  What is the evidence that he's a danger now going forward?

11          I found a case from the Middle District of Florida,

12  *United States versus Ingram,* 415 F.Supp.3d 1072, talks about

13  risk of danger to the community, refers to, quote, the

14  probability that a released defendant will continue to engage

15  in criminal conduct.  There's no evidence, ever, at all.

16          Now, the guns, he's a lawful Second Amendment gun

17  owner, he has a Florida concealed permit, concealed carry

18  permit, and those guns have now been seized by law enforcement

19  as part of the search warrant.  He doesn't have the guns

20  anymore, and you could put a restriction on any future gun

21  ownership, obviously, and he wouldn't do that.

22          So he had a lot of lawful guns, as do a lot of

23  Americans, and that is not a factor to be considered, or it

24  shouldn't be a factor that determines that someone is dangerous

25  just because they are a lawful Second Amendment gun owner.

1          So, there's lots of conditions short of the most

2   severe condition of holding this guy in jail until a trial in

3   the District of Colombia who knows when, as shown by these

4   other defendants.  You could put conditions of release on him.

5   You could require a forfeiture agreement on the house that he

6   owns with his wife.  His wife is on her way here and should be

7   here shortly.  You could put electronic monitoring on.  You

8   could put home detention on.  There's any number of things you

9   could do.

10          I note that the Pretrial Services Office, whose job

11  it is to make these determinations, on page 4, they say he's an

12  assessment -- he poses a risk of danger for two reasons, prior

13  convictions of alcohol-related offense, which stopped at age

14  30, that was 20 years ago, and conflicting information

15  regarding his use of controlled substances.  Apparently he has

16  a back problem and he may have taken marijuana for that in the

17  past.  That's the Pretrial Services, the professionals who do

18  this for a living, that's their assessment of his risk of

19  danger.  And what was Pretrial Services' recommendation?

20  Unsecured bond.  Unsecured bond is what the professionals say

21  is the recommendation; and the Government comes in here at the

22  exact opposite extreme and recommends detention.  There's got

23  to be something between unsecured bond and detention, if the

24  Court has any concerns, that the Court could fashion, like

25  these other defendants, Caldwell, Young, Meggs, et cetera, that

1    would assure his appearance in the District of Colombia and no

2    further criminal conduct, and for which there's no evidence

3    that he's been involved in criminal conduct since January 6th.

4          And as I said, he is not charged with, you know,

5    punching a cop, kicking a cop, whatever, he was not charged

6    with doing any obstructive activity after January 6th, and so

7    he is charged in Counts, One, Two, Three and Four, yes, so is

8    Ms. Meggs, and she was released for the same conduct.

9          His last prior criminal activity was 20 years ago and

10   he has nothing since then.  He's a lawful chiropractor.  He's

11   married.  He has an 11-year-old girl.  Don't take him away from

12   his daughter.

13         Thank you.

14         THE COURT:  Thank you, Mr. Darken.

15         Mr. Darken, before you sit down, sir, it's your

16   position that the presumption of detention does not apply in

17   this case?

18         MR. DARKEN:  Your Honor, that's my position.  I was

19   at home in Wesley Chapel when I got this call.  I drove down

20   here as fast as I can.  I've done limited legal research.

21         It's my argument that charging someone with

22   conspiracy to -- whatever it's called in Count Three, deprecate

23   property of the United States more than $1,000, does not appear

24   to me to meet the definition of crime of violence.  I can't

25   cite a case that says that.

1          THE COURT:  All right.  Even though the statute

2    specifically cites 18 U.S.C. Section 1361 as one of the

3    enumerated offenses under 18 U.S.C. Section 2332b(g)(5)(B)?

4          MR. DARKEN:  Well, Your Honor, I would say that based

5    on that it appears that the presumption would apply, but

6    I believe we've overcome the presumption based on all the

7    evidence presented.

8          THE COURT:  All right.  Well, I appreciate,

9    Mr. Darken, that -- the nature of someone being arrested,

10   there's a short time period between finding out and having the

11   initial appearance and the bond hearing, so what I'd like to do

12   is take a brief recess, I'm going to print out a copy of the

13   statute for you, have you look at it, and then -- so you can

14   make an informed decision as to whether you're arguing that

15   18 U.S.C. Section 2332b(g)(5)(B), which presents a presumption

16   of detention under 18 U.S.C. Section 3142(e)(3), whether it

17   applies, and just once I get that clear on the record as to

18   what your argument is, then the Court will make its ruling,

19   all right?

20          We'll take a brief recess.

21               - - - - -

22          (Recess at 3:30 p.m. until 3:41 p.m.)

23               - - - - -

24          THE COURT:  All right.  Mr. Darken, at this time

25   would you like a continuance and we'll take this matter up

1    after we -- the Court takes up the other initial appearances

2    that I have on my calendar for this afternoon?

3              MR. DARKEN:  Yes, Your Honor, I would like a

4    continuance for later today, Your Honor.

5              THE COURT:  All right.  Ms. Hale, any objection?

6              MR. DARKEN:  No, sir, that's fine.

7              THE COURT:  All right.  The continuance is granted.

8    The Court will take up the other initial appearances and then

9    we'll reopen or resume this hearing later this afternoon.

10             Mr. Calderon, would you please call the next case.

11                         - - - - -

12             (Recess at 3:43 p.m. until 4:32 p.m.)

13                         - - - - -

14             THE COURT:  All right.  Mr. Calderon, would you

15   re-call the case.

16             COURTROOM DEPUTY:  In the matter of United States of

17   America versus Joseph Hackett, Criminal Case Number

18   8:21-MJ-1527-SPF.

19             THE COURT:  All right.  Would Counsel please make

20   appearances again.

21             MS. HALE:  Good afternoon, Your Honor.  Once again,

22   Shauna Hale for the United States.

23             THE COURT:  Good afternoon.

24             MR. DARKEN:  Kevin Darken, with a limited appearance,

25   Your Honor, for Mr. Hackett.

1           THE COURT:  All right.  Thank you, Mr. Darken.

2           All right.  Mr. Darken, before you asked for the

3  recess we were in the middle of a bond hearing, and we took a

4  recess so that you could take a look and decide whether you

5  believe and it's your argument that the presumption of

6  detention does not apply in this matter, so let me hear from

7  you.

8           MR. DARKEN:  Your Honor, I've reviewed Title 18

9  Section 2332b(g)(5)(B) as that applies to the presumption

10  statute, and I concede that Count Three, Title 18 Section 1361

11  is one of the listed offenses in 2332b(g)(5)(B), so to that

12  extent I concede that the presumption applies.

13           I would note, however, if the Court looks at the

14  offenses listed in 2332b(g)(5)(B), they include heinous crimes,

15  violence at international airports, biological weapons,

16  Supreme Court assassinations, nuclear weapons of mass

17  destruction, et cetera, which have nothing to do with a

18  property crime over $1,000.  So I concede that the --

19  Count Three technically falls within the presumption; however,

20  for the reasons that I've argued before, and as shown by how

21  the other defendants must have overcame that presumption when

22  they were released by other judges, often under conditions with

23  some combination of electronic monitoring or home detention,

24  that I can and I believe I have rebutted the presumption.

25           This defendant -- although other defendants were

1    charged in this indictment with physical altercations with

2    police and with obstruction of investigations, this defendant

3    is charged in this count, where the presumption applies, with a

4    property crime, and it's my position that he can rebut that

5    presumption.  It's true that he's not from the District of

6    Colombia, but he would only be going to the District of

7    Colombia for court appearances anyway, he would be living here,

8    and he has a long, long history here with his family, with his

9    business, which should mitigate against any risk of future

10   conduct, which could also be mitigated by other conditions like

11   internet restrictions or restrictions on meeting with members

12   of Oath Keepers or other restrictions that the Court could

13   envision.

14           So it is my position that although the presumption

15   applies, it has been rebutted in this case and he should be

16   subject to some form of release.

17           THE COURT:  Thank you, Mr. Darken.

18           Ms. Hale, any further argument?

19           MS. HALE:  Yes, Your Honor, briefly.

20           I'd say that this wasn't just a technical violation

21   or a property crime.  When you look at what's called for, or

22   the definition of a Federal Crime of Terrorism under 232 --

23   2332b(g)(5)(B), it's an offense that must be calculated to

24   influence or affect the conduct of Government by intimidation

25   or coercion, or to retaliate against Government conduct.  Here

1    what you have, as alleged in the indictment, which is -- it's

2    about 40 pages, it's a speaking indictment that pretty well

3    lays out the facts of what's involved here, and that's what

4    these individuals were trying to do, was retaliate and

5    intimidate the Government to -- members of Congress to not

6    certify the election.

7            So this isn't just some property crime where these

8    individuals decided that they wanted to destroy Government

9    property.  That's certainly true, that's certainly part of it,

10   but what makes this a Federal Crime of Terrorism is their

11   intent behind what they were doing.  And so this defendant, in

12   looking at -- as I've stated, in looking at the factors that

13   the Court must consider under 3142 and the things that he did

14   as a part of sort of the planning committee as a member of the

15   Oath Keepers, which I didn't know much about before this, but

16   just sort of a brief Google search, their idea is to defend

17   what they believe the Constitution says, and if something goes

18   against what they believe their interpretation of the

19   Constitution is, they don't follow it.  That's what makes this

20   defendant both a danger to the community as well as a risk of

21   flight in D.C.  That's what we have to look at, what his --

22   what is his status or what ties does he have to the District of

23   Colombia.  There is none.

24           So I did want to make one brief correction,

25   Your Honor.  I believe I said that there were 11 long guns that

1    were found at his residence.  There were seven long guns, not

2    11, one of which was an AR style rifle, and there were three --

3    three or more handguns and approximately 3,000 rounds of

4    ammunition.

5              Based on the totality, and looking at 3142, this

6    defendant cannot overcome the presumption of this Federal crime

7    of terrorism and crime of violence.

8              Mr. Darken is correct, there have been others who

9    have been released to home detention, but there have also been

10   those who have been charged just like this defendant who have

11   been detained in this case.

12             THE COURT:  All right.  Thank you, Ms. Hale.

13             Mr. Darken, you're standing.  Would you like to say

14   anything else?

15             MR. DARKEN:  I just want to say one other thing,

16   Your Honor, in response to Ms. Hale's recent argument.

17             So if you look at 2332b(5), it defines the crime --

18   the term Federal Crime of Terrorism, and it's got two sections,

19   the A section and the B section.  The B section is the list of

20   all of the crimes that are then referred to under the

21   presumption statute.  The reason that the presumption applies

22   is simply because thirty -- 1361, the property depredation

23   crime in Count Three, is listed in the B section, and that

24   would apply whether or not any conduct was calculated to

25   influence or affect the Government, the conduct of the

1    Government by intimidation or coercion in the A section.  So A

2    doesn't even really matter to -- for purposes of this, he's

3    just in it because 1361 is listed in the B section.

4              THE COURT:  All right.  Thank you, Mr. Darken.

5              The Court, after considering the proffer of the

6    Government, the defendant's response, and the factors listed in

7    18 U.S.C. Section 3142(g) does find that the defendant is due

8    to be detained.  The Court finds specifically that the

9    presumption of detention in 18 U.S.C. Section 3142(e)(3)

10   applies and that he -- this is an offense that he's been

11   charged with, as listed in 18 U.S.C. Section 2332b(g)(5)(B),

12   for which a maximum term of imprisonment of ten years or more

13   is prescribed.

14             The Court does find, however, that the defendant has

15   rebutted this presumption, but even though that presumption has

16   been rebutted, the Court must take the presumption or does take

17   the presumption into account when determining whether there are

18   conditions that would reasonably assure the defendant's

19   appearance at all future court proceedings and reasonably

20   assure the safety of any other person in the community; and the

21   Court finds by clear and convincing evidence that there are no

22   conditions or combination of conditions of release that will

23   reasonably assure the safety of any other person in the

24   community, and there are many reasons for the Court's

25   determination and I will go over some of them now.

1          First, I want to comment on defense counsel's

2     argument that there are other co-defendants who have been

3     charged with the same crimes who have been released on

4     conditions of release.

5          As, Mr. Darken, I'm sure you're aware, the Court has

6     the responsibility to make an independent determination at a

7     bond hearing, and the Court makes that determination based on

8     the proffered evidence and the factors the Court must consider

9     as it relates to the defendant that appears before him.  The

10    Court can't comment as to what other defendants appearing

11    before other judges, what their situation was and how the

12    proffered evidence affected the Court's determination after

13    weighing the factors in 18 U.S.C. Section 3142(g), but in this

14    case and in this defendant, the Court is satisfied with the

15    Government's proffer that the weight of the evidence against

16    the defendant is strong, he is subject to a lengthy period of

17    incarceration if convicted.  He does have a prior criminal

18    history, although the Court notes it is not a determining

19    factor in the Court's decision.

20         What the Court is more concerned about is not the

21    lawful owning of firearms, that in and of itself the Court

22    agrees the defendant is -- has a license and is authorized to

23    own those firearms; however, in combination with the alleged

24    acts in this case, including the -- what has been proffered by

25    the Government of acting in a quasi militia and engaging in

1   paramilitary training, as well as carrying weapons, firearms

2   across state lines and in close proximity to Washington, D.C.,

3   I believe the Government proffered it was in Virginia, and

4   stashed those guns and intended to use those guns, if

5   necessary, as quick response force.

6       It's also been proffered to the Court, and the Court

7   accepts the proffer at this stage, for purposes of only

8   determining whether there are conditions of release that can be

9   imposed, that the defendant was an organizer and one of the

10  leaders of this group, and that it was a -- premeditated or

11  preplanned actions by the defendant.  It was not a situation

12  where it's alleged -- or has not been alleged to this Court the

13  defendant was peacefully protesting and got swept away and

14  ended up entering the Capitol Building.  Rather, it's been

15  proffered that this was a planned, coordinated event in which

16  he had a leadership position and engaged in the preplanning of

17  this event.  It was also proffered that the defendant showed up

18  at the Capitol on January 6 wearing tactical gear, and that he

19  was part of the group that breached the Capitol, and forgive me

20  for not remembering the exact term used by the prosecutor,

21  Ms. Hale, but the single file line that they used, the method

22  in which they breached the perimeter in order to gain access to

23  the Capitol, as well as the alleged stated intent of doing so.

24      When I take all this into consideration, and on top

25  of that the information that the Government presented about all

1    the firearms, including some firearms that can do very

2    significant damage to a lot of people in a short amount of

3    time, the Court does find that the defendant is a danger to the

4    community, and there are no conditions of release that I can

5    impose that will reasonably assure the safety of the community,

6    therefore I must order the defendant's detention, and I will do

7    so.

8              The Court will issue written findings along those

9    lines and may put forth other factors which the Court

10   considered in making that determination.

11             Is there anything further for the Court to take up at

12   this time, Ms. Hale?

13             MS. HALE:  Your Honor, I don't believe he needs --

14   I don't know if he has to be arraigned here or when he gets

15   to -- when he gets to D.C.

16             THE COURT:  He's typically arraigned in the district

17   in which the charges are pending, but, Mr. Darken, if you

18   believe your client needs to be arraigned here, please let me

19   know.

20             MR. DARKEN:  No, Your Honor, they should do that in

21   D.C.

22             MS. HALE:  All right.  Thank you.

23             THE COURT:  All right.  Is there anything further

24   from the defense, Mr. Darken?

25             MR. DARKEN:  No, Your Honor.

1            THE COURT:  All right.  Thank you.  We're adjourned.

2                        -  -  -  -  -

3            (Proceedings concluded at 4:46 p.m.)

4                        -  -  -  -  -

```
 1                C E R T I F I C A T E

 2

 3          This is to certify that the foregoing transcript of

 4   proceedings taken in an initial appearance and detention

 5   hearing in the United States District Court is a true and

 6   accurate transcript of the proceedings taken by me in machine

 7   shorthand and transcribed by computer under my supervision,

 8   this the 3rd day of July, 2021.

 9

10

11                              /S/ DAVID J. COLLIER

12

13                         DAVID J. COLLIER

14                         OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```